## UNITED STATES DISTRICT COURT
## EASTERN DISTRCT OF NEW YORK

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CLARIVATE PLC, JERRE STEAD, RICHARD HANKS, SHERYL VON BLUCHER, KOSTY GILLIS, BALAKRISHNAN S. IYER, NICHOLAS MACKSEY, ANTHONY MUNK, JANE OKUN BOMBA, CHARLES J. NERAL, RICHARD W. ROEDEL, CHRISTINE ARCHBOLD, CITIGROUP GLOBAL MARKETS INC., BOFA SECURITIES, INC., RBC CAPITAL MARKETS, LLC, BARCLAYS CAPITAL, INC., HSBC SECURITIES (USA) INC., J.P. MORGAN SECURITIES LLC, and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | Case No. 1:22-cv-1372<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Arkansas Teacher Retirement System ("ATRS" or "Plaintiff"), by and through its counsel, alleges the following upon personal knowledge as to its own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based on, among other things, the independent investigation of counsel. This investigation includes, but is not limited to, a review and analysis of: (i) public filings by Clarivate Plc ("Clarivate" or the "Company") with the Securities and Exchange Commission ("SEC"); (ii) transcripts of Clarivate conferences with investors and analysts; (iii) press releases and media reports concerning the Company; (iv) analyst reports concerning Clarivate; and (v) other public information and data regarding the Company.

## I.   <u>NATURE OF THE ACTION AND OVERVIEW</u>

1.      This is a securities class action on behalf of all persons and entities that: (1) purchased or otherwise acquired Clarivate securities between February 26, 2021 and February 2, 2022 (the "Class Period"); and/or (2) purchased or otherwise acquired Clarivate 5.25% Series A Mandatory Convertible Preferred Shares ("Preferred Shares") pursuant and/or traceable to the Company's Preferred Shares Offering conducted on or around June 9, 2021.

2.      Plaintiff asserts claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.   The claims are alleged against: (i) Clarivate; (ii) the Company's Executive Chairman and Chief Executive Officer ("CEO") Jerre Stead ("Stead"); (iii) the Company's former Chief Financial Officer ("CFO") Richard Hanks ("Hanks"); (iv) the current members of Clarivate's Board of Directors and Clarivate's Chief Accounting Officer ("CAO") that signed the Registration Statement (defined below) for the Preferred Shares Offering; (v) the underwriters of the Preferred Shares Offering; and (vi) Clarivate's outside auditor (collectively, "Defendants").

3.      Clarivate is an information services and analytics company.  In May 2019, Clarivate became a publicly traded company after the special purpose acquisition company ("SPAC") Churchill Capital Corp ("Churchill") purchased the Company.  On October 1, 2020, Clarivate acquired 100% of the assets, liabilities, and equity interests of CPA Global, an intellectual property software and tech-enabled services company.

4.      Throughout the Class Period, Clarivate consistently told investors that its financial statements were accurate and that its internal controls over financial reporting ("ICFR") and disclosure controls and procedures ("DCP") were effective.  For instance, on February 26, 2021,

the first day of the Class Period, Clarivate filed its annual report on Form 10-K with the SEC, reporting the Company's financial results for the quarter and year ended December 31, 2020 (the "2020 10-K"). For the fiscal year, Clarivate reported the following financial information:

| Financial Metric | Amount Reported |
|---|---|
| Income from Operations | $2.805 million |
| Benefit (provision) for Income Taxes | $2.799 million |
| Net Income (Loss) | ($106.31 million) |
| Basic and Diluted Loss Per Share | $0.25 |
| Total Current Assets | $1.328 billion |
| Other Non-Current Assets | $47.944 million |
| Total Current Liabilities | $1.569 billion |
| Other Non-Current Liabilities | $67.722 million |
| Total Shareholders' Equity | $9.593 billion |

5. And with respect to Clarivate's internal controls, the Company told investors in the 2020 10-K that its ICFR and DCP "were effective."

6. Three months later, on April 29, 2021, Clarivate announced that it would be forced to restate its financial statements for nearly the entire previous two years because the Company determined that it had incorrectly accounted for certain warrants issued in connection with the SPAC transaction in May 2019. According to Clarivate, the need to restate was driven by recent commentary from the SEC as to how companies such as Clarivate had been valuing warrants issued in connection with SPAC transactions. Clarivate asserted that it incorrectly classified the warrants as equity of the Company, which should have been classified as a liability measured at fair value, with changes in fair value each period reported in earnings.

7. On May 10, 2021, Clarivate filed an amendment on Form 10-K/A with the SEC, amending the 2020 10-K (the "2020 10-K/A") to correct the incorrect classification of the warrants. For fiscal year 2020, the 2020 10-K/A reported amended and restated financial information as follows:

| Financial Metric | 2020 10-K/A | 2020 10-K |
|---|---|---|
| Income from Operations | $2.805 million | $2.805 million |
| Benefit (provision) for Income Taxes | $2.302 million | $2.799 million |
| Net Income (Loss) | ($311.869 million) | ($106.31 million) |
| Basic and Diluted Loss Per Share | $0.73 | $0.25 |
| Total Current Assets | $1.327 billion | $1.328 billion |
| Other Non-Current Assets | $47.944 million | $47.944 million |
| Total Current Liabilities | $1.569 billion | $1.569 billion |
| Other Non-Current Liabilities | $67.722 million | $67.722 million |
| Total Shareholders' Equity | $9.289 billion | $9.593 billion |

8.     While Clarivate restated its financial results in the 2020 10-K/A, the Company continued to conceal the true extent of the errors in its accounting.  Moreover, although Clarivate acknowledged in the restatement that it suffered from a material weakness in internal controls, the Company continuously assured investors that the weakness was cabined to the narrow issue relating to Clarivate's valuation of warrants, and that its accounting was otherwise accurate.

9.     For the remainder of the Class Period, covering the subsequent three financial quarters, Clarivate repeatedly attested to the effectiveness of its internal controls (save for the warrant issue) and the accuracy of its accounting, reporting the following financial information as set forth in the table below in its quarterly financial filings with the SEC:

| Financial Metric | 1Q 21 | 2Q 21 | 3Q 21 |
|---|---|---|---|
| Income (Loss) from Operations | ($34.207 million) | ($11.752 million) | $9.072 million |
| Benefit (provision) for Income Taxes | ($3.569 million) | ($10.868 million) | ($3.579 million) |
| Net Income (Loss) | $23.954 million | ($82.210 million) | $23.312 million |
| Basic and Diluted Loss Per Share | $0.04 | $0.13 | $0 |
| Total Current Assets | $1.414 billion | $5.486 billion | $5.189 billion |
| Other Non-Current Assets | $42.504 million | $42.145 million | $41.808 million |
| Total Current Liabilities | $1.467 billion | $3.420 billion | $3.161 billion |
| Other Non-Current Liabilities | $62.143 million | $62.149 million | $58.332 million |
| Total Shareholders' Equity | $9.396 billion | $11.490 billion | $11.210 billion |

10.     On or around June 9, 2021, Clarivate issued 12.5 million Preferred Shares at $100.00 per share, raising total proceeds of $1.25 billion.  In connection with the Preferred Shares Offering, Clarivate provided the underwriters with the option to purchase an additional 1.875 million Preferred Shares, which the underwriters exercised in full, bringing the total proceeds raised by Clarivate to more than $1.4 billion.  The Preferred Shares Offering Materials (defined below) incorporated by reference Clarivate's 2020 10-K/A, as well as the Company's quarterly report for 1Q 2021, thus reiterating the same statements in those documents and reaffirming the accuracy of Clarivate's accounting.

11.     These statements were materially false and misleading.  In truth: (i) Clarivate's financial statements issued during the Class Period, including the 2020 10-K/A and the quarterly report for 1Q 2021 which the Company incorporated by reference into the Preferred Shares Offering Materials, violated Generally Accepted Accounting Principles ("GAAP"); (ii) the Company maintained defective disclosure controls and procedures as a result of a material weakness in its internal control over financial reporting; and (iii) the foregoing material weakness was not limited to how the Company accounted for warrants.

12.     On December 27, 2021, Clarivate announced that it again needed to restate its financial statements for the year ended December 31, 2020, as well as for 1Q, 2Q, and 3Q 2021. The Company admitted that there was an "error" in those financial statements because it incorrectly recorded as part of the acquisition accounting for the CPA Global transaction roughly $185 million in equity awards that CPA Global made under its equity plan.  To correctly account for the equity awards, GAAP required Clarivate to recognize the equity awards expenses as stock-based compensation charges over the vesting period from October 1, 2020 to October 1, 2021, with only a portion of the liability recorded as part of the acquisition accounting.

13.     Given the magnitude of the error, Clarivate acknowledged that it expected to report a material weakness in its ICFR and DCP, and that a range of GAAP financial metrics would be impacted, including "income (loss) from operations, benefit (provision) for income taxes, net income (loss), earnings (loss) per share, current and non-current assets, current and non-current liabilities, and shareholders' equity."

14.     Also on December 27, 2021, *StreetInsider.com*, a stock market and news analysis service, published an article titled, "Clarivate Plc (CLVT) PT Lowered to $29 at Stifel on Accounting Error."  The article reported, in relevant part, that "Stifel analyst Shlomo Rosenbaum lowered the price target on Clarivate . . . to $29.00 (from $32.00)" following the Company's disclosure that "it discovered an accounting error related to equity awards that CPA Global had issued under its equity plan."

15.     On this news, the price of Clarivate common stock fell $0.16 per share, or 0.65%, from $24.74 per share on December 23, 2021 to $24.58 per share at the close of trading on December 27, 2021.  As the market continued to digest the forthcoming restatement, the price of Clarivate common stock fell an additional $1.70, or 6.92%, from $24.58 per share on December 27, 2021 to $22.88 per share at the close of trading on December 28, 2021.

16.     Likewise, the price of Clarivate preferred stock fell $0.35 per share, or 0.37%, from $94.01 per share on December 23, 2021 to $93.66 per share at the close of trading on December 27, 2021.  Clarivate preferred stock then fell an additional $5.22 per share, or 5.6%, to $88.44 per share at the close of trading on December 28, 2021—a total decline of $5.57 per share, or 5.9%, over two consecutive trading days.

17.     On February 3, 2022, Clarivate announced that it had completed its restatement, admitted it suffered from a material weakness in ICFR and DCP in 2020 and the first three quarters

of 2021, and identified how the misstatements impacted the Company's prior period financial statements.  Specifically, with respect to the 2020 10-K/A, Clarivate restated the financial information for the year ended 2020, including that the Company's income from operations of $2.8 million evaporated and swung to a significant loss of $36 million, and Clarivate's net loss plunged over 12% from $311.869 million to $350.625 million.

18.     Clarivate also restated its quarterly reports for 1Q, 2Q, and 3Q 2021.  These restatements were even more significant, with, for example, the Company's loss from operations increasing by over 103% and its net loss increasing by over 133% in 1Q 21, and its loss from operations increasing by nearly 343% and its net loss increasing by over 60% in 2Q 21.

19.     Clarivate also told investors that the restatement, in addition to impacting prior periods, will cause "[n]et income for the full year of 2021 [to] be significantly below guidance."

20.     The particulars of the restatements and admission of additional material weaknesses caused the price of Clarivate common stock to fall $2.90 per share, or 16.4%, from $17.71 per share on February 2, 2022 to $14.81 per share at the close of trading on February 3, 2022.

21.     Likewise, the price of Clarivate preferred stock fell $9.30 per share, or 12.9%, from $72.30 per share on February 2, 2022 to $63.00 per share at the close of trading on February 3, 2022.

## II.    JURISDICTION AND VENUE

22.     The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

23.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

24.     Venue is proper in this District pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1391(b)(c) and (d) because the acts and transactions giving rise to the violations of law complained of occurred in part in this District, including the dissemination of materially false and misleading statements into this District.  Pursuant to the Company's most recent quarterly report on Form 10-Q, as of September 30, 2021, Clarivate had more than 639 million of its ordinary shares outstanding and more than 14 million preferred shares outstanding.  Accordingly, there are presumably thousands of investors in Clarivate securities located within the United States, some of whom undoubtedly reside in this District.

25.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.     PARTIES

### A.     Plaintiff

26.     Plaintiff ATRS is a pension fund trust organized under the laws of the State of Arkansas.  Established in 1937, ATRS provides retirement benefits for the employees of Arkansas's education community and manages approximately $21 billion in assets.  As detailed in the Certification submitted herewith, ATRS purchased Clarivate securities at artificially inflated

prices during the Class Period and suffered damages as a result of the violations of the securities laws alleged herein.

### B.   Corporate Defendant

27.     Defendant Clarivate is organized under the laws of Jersey, Channel Islands, with its principal executive offices located at 70 St. Mary Axe, London EC3A 8BE, United Kingdom. The Company's ordinary shares and 5.25% Series A mandatory convertible preferred shares trade in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbols "CLVT" and "CLVT PR A," respectively.

### C.   Officer Defendants

28.     Defendant Stead is, and at all relevant times was, the Company's CEO.  Defendant Stead signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

29.     Defendant Hanks was the Company's CFO during the Class Period until December 15, 2021.  Defendant Hanks signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

30.     Defendants Stead and Hanks are collectively referred to herein as the "Officer Defendants," and together with Defendant Clarivate, the "Exchange Act Defendants."  The Officer Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.

31.     The Officer Defendants were provided with copies of the Company's presentations and SEC filings alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

32.     Because of their positions and access to material non-public information available to them, the Officer Defendants knew that the adverse facts and omissions specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations and omissions which were being made were then materially false and/or misleading.

### D.     Director Defendants

33.     Defendant Sheryl von Blucher ("von Blucher") is, and at all relevant times was, a Director of Clarivate.  Defendant von Blucher signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

34.     Defendant Kosty Gilis ("Gilis") is, and at all relevant times was, a Director of Clarivate.  Defendant Gilis signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

35.     Defendant Balakrishnan S. Iyer ("Iyer") is, and at all relevant times was, a Director of Clarivate.  Defendant Iyer signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

36.     Defendant Nicholas Macksey ("Macksey") is, and at all relevant times was, a Director of Clarivate.  Defendant Macksey signed the Registration Statement and is therefore liable

under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

37.     Defendant Anthony Munk ("Munk") is, and at all relevant times was, a Director of Clarivate.  Defendant Munk signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

38.     Defendant Jane Okun Bomba ("Bomba") is, and at all relevant times was, a Director of Clarivate.  Defendant Bomba signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

39.     Defendant Charles J. Neral ("Neral") is, and at all relevant times was, a Director of Clarivate.  Defendant Neral signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

40.     Defendant Richard W. Roedel ("Roedel") is, and at all relevant times was, a Director of Clarivate.  Defendant Roedel signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

41.     Defendants von Blucher, Gilis, Iyer, Macksey, Munk, Bomba, Neral, and Roedel are collectively referred to herein as the "Director Defendants."

**E.      Chief Accounting Officer Defendant**

42.     Defendant Christine Archbold ("Archbold") is, and at all relevant times was, Clarivate's CAO.  Defendant Archbold signed the Registration Statement and is therefore liable

under the Securities Act for the untrue and misleading statements and omissions in the Preferred Shares Offering Materials.

43.     The Officer Defendants, Director Defendants, and Archbold are collectively referred to herein as the "Individual Defendants."  Each of the Individual Defendants signed the Registration Statement for the Offering.  In addition, as Directors and/or executive officers of the Company, the Individual Defendants participated in the solicitation and sale of Clarivate Preferred Shares to investors for their own benefit and the benefit of Clarivate.  The Individual Defendants, because of their positions with Clarivate, possessed the power an authority to control the contents of the Offering Materials.

### F.      Underwriter Defendants

44.     Citigroup Global Markets Inc. ("Citigroup") served as an underwriter and Sole Global Coordinator and Joint Book-Running Manager of the Preferred Shares Offering.  In the Offering, Clarivate sold Citigroup 7,211,539 preferred shares to offer and sell to the public.  As an underwriter of the Offering, Citigroup was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Preferred Shares Offering Materials.

45.     BofA Securities, Inc. ("BofA") served as an underwriter and Joint Book-Running Manager of the Preferred Shares Offering.  In the Offering, Clarivate sold  BofA 1,322,116 preferred shares to offer and sell to the public.  As an underwriter of the Offering, BofA was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Preferred Shares Offering Materials.

46.     RBC Capital Markets, LLC ("RBC") served as an underwriter and Joint Book-Running Manager of the Preferred Shares Offering.  In the Offering, Clarivate sold RBC 1,057,692

preferred shares to offer and sell to the public.  As an underwriter of the Offering, RBC was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Preferred Shares Offering Materials.

47.     Barclays Capital Inc. ("Barclays") served as an underwriter and Joint Book-Running Manager of the Preferred Shares Offering.  In the Offering, Clarivate sold Barclays 969,551 preferred shares to offer and sell to the public.  As an underwriter of the Offering, Barclays was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Preferred Shares Offering Materials.

48.     HSBC Securities (USA) Inc. ("HSBC") served as an underwriter and Joint Book-Running Manager of the Preferred Shares Offering.  In the Offering, Clarivate sold 969,551 preferred shares to HSBC to offer and sell to the public.  As an underwriter of the Offering, HSBC was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Preferred Shares Offering Materials.

49.     J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter and Joint Book-Running Manager of the Preferred Shares Offering.  In the Offering, Clarivate sold J.P. Morgan 969,551 preferred shares to offer and sell to the public.  As an underwriter of the Offering, J.P. Morgan was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Preferred Shares Offering Materials.

**G. Auditor Defendant**

50.     PricewaterhouseCoopers LLP ("PwC") served as Clarivate's outside auditor at all relevant times and provided audit services to the Company before and throughout the Class Period. PwC issued an audit report in regard to the Company's 2020 10-K/A financial statement and internal controls for fiscal year 2020 and stated that it conducted its 2020 audit in accordance with

controlling auditing standards.  The Registration Statement incorporated by reference PwC's audit report regarding the 2020 10-K/A with the consent of PwC .

## IV.   SUBSTANTIVE ALLEGATIONS

### Background

51.     Clarivate is an information services and data analytics company.  The Company operates a collection of subscription-based services in the areas of scientific and academic research, biotech, business, and healthcare.  Clarivate was formerly the intellectual property and science division of Thomson Reuters.  In 2016, Thomson Reuters struck a $3.55 billion deal to spin-off Clarivate and sell it to a pair of private equity firms.

52.     In January 2019, Churchill Capital Corp, a SPAC led by Defendant Stead, announced that it would combine with Clarivate.  The merger was completed in May 2019, at which time the ordinary shares of Clarivate began trading on the NYSE.

53.     On June 19, 2020, Clarivate filed a Form S-3 shelf registration statement and Prospectus with the SEC (the "Registration Statement").  Under the shelf registration process, Clarivate may sell any combination of the securities described in the Registration Statement in one or more offerings.  The securities described in the Registration Statement are ordinary shares, preferred shares, debt securities, warrants, purchase contracts, and units.  On July 1, 2020, the SEC issued a Notice of Effectiveness of the Registration Statement.

54.     On October 1, 2020, Clarivate acquired 100% of the assets, liabilities, and equity interests of CPA Global, a company that provides intellectual property software and tech-enabled services.

55.     On or about June 9, 2021, Clarivate conducted the Preferred Shares Offering in which it offered and sold 12,500,000 5.25% Series A Mandatory Convertible Preferred Shares at

a price of $100 per share, raising proceeds of $1.25 billion.  Additionally, Clarivate gave the Underwriter Defendants the option to purchase an additional 1.875 million preferred shares, which they exercised in full, bringing Clarivate's total proceeds from the Offering to more than $1.4 billion.

56.     In connection with the Offering, Clarivate filed Prospectus Supplements on June 8, 2021, June 10, 2021, and June 11, 2021 which form part of the Registration Statement.  The Registration Statement and Prospectus Supplements are referred to herein as the "Preferred Shares Offering Materials" or the "Offering Materials."

**Materially False and Misleading Statements Issued During the Class Period**

57.     The Class Period begins on February 26, 2021, when Clarivate filed the 2020 10-K.  For the year, the 2020 10-K reported income from operations of $2.805 million, benefit for income taxes of $2.799 million, a net loss of $106.31 million, basic and diluted loss per share of $0.25, total current assets of $1.328 billion, other non-current assets of $47.944 million, total current liabilities of $1.569 billion, other non-current liabilities of $67.722 million, and total shareholders' equity of $9.593 billion.

58.     The 2020 10-K also stated the following regarding Clarivate's acquisition of CPA Global:

> On October 1, 2020, we acquired 100% of the assets, liabilities and equity interests of CPA Global, a global leader in intellectual property software and tech-enabled services. Clarivate acquired all of the outstanding shares of CPA Global in a cash and stock transaction. The aggregate consideration in connection with the closing of the CPA Global acquisition was $8,740,989, net of $98,610 cash acquired, including an equity hold back consideration of $46,485. The aggregate consideration was composed of (i) $6,761,515 from the issuance of up to 218,183,778 ordinary shares to Redtop Holdings Limited, a portfolio company of Leonard Green & Partners, L.P., representing approximately 35% *pro forma* fully diluted ownership of Clarivate and (ii) approximately $2,078,084 in cash to fund the repayment of CPA Global's parent company outstanding debt of $2,055,822 and related interest swap termination fee of $22,262. Of the 218,306,663 ordinary

shares issuable in the acquisition, Clarivate issued 216,683,778 ordinary shares as of October 1, 2020.

59.     Regarding Clarivate's disclosure controls and procedures, the 2020 10-K assured investors that "[o]ur management, with the participation of [the Individual Defendants], evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2020" and that, "[b]ased on the evaluation of our disclosure controls and procedures as of December 31, 2020, [the Officer Defendants] concluded that, as of such date, our disclosure controls and procedures were effective."

60.     The 2020 10-K also assured investors that "Clarivate's management assessed the effectiveness of Clarivate's internal control over financial reporting as of December 31, 2020"; that "[i]n making this assessment, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control — Integrated Framework (2013)"; that "[b]ased on management's assessment and those criteria, management has concluded that Clarivate's internal control over financial reporting was effective as of December 31, 2020"; that "[d]uring the fourth quarter of 2020, excluding [*inter alia*] CPA Global . . . there was no change in Clarivate's internal control over financial reporting that materially affected, or is reasonably likely to materially affect, internal control over financial reporting"; and that "[m]anagement is currently evaluating the impact of CPA Global . . . on Clarivate's internal control over financial reporting."

61.     Appended as an exhibit to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

62.     On May 10, 2021, Clarivate filed an amendment on Form 10-K/A with the SEC, amending the 2020 10-K (the "2020 10-K/A").  For the year, the 2020 10-K/A reported amended and restated income from operations of $2.805 million, benefit for income taxes of $2,302, a net loss of $311.869 million, basic and diluted loss per share of $0.73, total current assets of $1.327 billion, other non-current assets of $47.944 million, total current liabilities of $1.569 billion, other non-current liabilities of $67.722 million, and total shareholders' equity of $9.28 billion.

63.     Additionally, the 2020 10-K/A contained the same statements as referenced in ¶ 58 *supra*, regarding Clarivate's acquisition of CPA Global.

64.     Although the 2020 10-K/A acknowledged that Clarivate had recently identified a material weakness in its internal control over financial reporting, it represented that this material weakness only related to its accounting for warrants.  For example, the 2020 10-K/A stated that the "material weakness [w]as a result of a lack of an effectively designed control over the evaluation of settlement features used to determine the classification of warrant instruments"; that "[n]otwithstanding this material weakness, management has concluded that our audited financial statements included in this [2020] 10-K/A are fairly stated in all material respects in accordance with GAAP for each of the periods presented herein"; that the Company's "remediation plan includes management designing a control at a sufficient level of precision over the evaluation of settlement features used to determine the classification of warrant instruments"; and that "excluding the internal control over financial reporting at . . . [*inter alia*] CPA Global . . . there was no change in Clarivate's internal control over financial reporting that materially affected, or is reasonably likely to materially affect, internal control over financial reporting."

65.     Appended as an exhibit to the 2020 10-K/A were substantively the same SOX certifications as referenced in ¶ 61 *supra*, signed by the Officer Defendants.

66.     Also on May 10, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  For the three months ended March 31, 2021, the 1Q21 10-Q reported loss from operations of $34.207 million, provision for income taxes of $3.569 million, a net loss of $23.954 million, basic and diluted loss per share of $0.04, total current assets of $1.414 billion, other non-current assets of $42.504 million, total current liabilities of $1.467 billion, other noncurrent liabilities of $62.143 million, and total shareholders' equity of $9.396 billion.

67.     Additionally, the 1Q21 10-Q contained substantively the same statements as referenced in ¶ 58 *supra*, regarding Clarivate's acquisition of CPA Global, while changing the aggregate consideration recorded in connection with the closing of that acquisition to $8,740,556, net of $99,043 cash acquired.

68.     While the 1Q21 10-Q acknowledged that Clarivate's disclosure controls and procedures were not effective, it cabined the lack of effectiveness to "a material weakness in our internal control over financial reporting related to a lack of an effectively designed control over the evaluation of settlement features used to determine the classification of warrant instruments, as disclosed in [the 2020 10-K/A]."

69.     The 1Q21 10-Q also continued to assure investors that "[o]ur remediation plan includes management designing a control at a sufficient level of precision over the evaluation of settlement features used to determine the classification of warrant instruments"; that, "[w]hile we believe that the[se] . . . actions will ultimately remediate the material weakness, we intend to continue to refine the control and test its effectiveness for a sufficient period of time prior to reaching any determination as to whether the material weakness has been remediated"; that "[n]otwithstanding the identified material weakness, management believes that the condensed

consolidated financial statements included in this [1Q21] 10-Q present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP"; and that "[t]here were no changes in our internal control over financial reporting that occurred during the period covered by this [1Q21] 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

70.     Appended as an exhibit to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 61, *supra*, signed by the Officer Defendants.

71.     On or about June 9, 2021, Clarivate conducted the Preferred Shares Offering.  The Offering Materials incorporated by reference the 2020 10-K/A and the 1Q21 10-Q, thus reiterating the same representations in those documents and reaffirming the accuracy of Clarivate's accounting and effectiveness of internal controls.

72.     On July 29, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q").  For the six months ended June 30, 2021, the 2Q21 10-Q reported loss from operations of $45.959 million, provision for income taxes of $14.437 million, a net loss of $106.164 million, basic and diluted loss per share of $0.17, total current assets of $5.486 billion, other non-current assets of $42.145 million, total current liabilities of $3.42 billion, other noncurrent liabilities of $62.149 million, and total shareholders' equity of $11.49 billion.

73.     Additionally, the 2Q21 10-Q contained substantively the same statements as referenced in ¶¶ 58 and 67, *supra*, regarding Clarivate's acquisition of CPA Global and the aggregate consideration recorded in connection with the closing of that acquisition, net of cash acquired.

74.     The 2Q21 10-Q also contained substantively the same statements as referenced in ¶¶ 68-69, *supra*, representing that the lack of effectiveness in Clarivate's financial controls was limited to the material weakness identified in the 2020 10-K/A, while assuring investors of the Company's remediation of that sole material weakness and the accuracy of the Company's financial position, results of operations, and cash flows as reported in the 2Q21 10-Q.

75.     Appended as an exhibit to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 61, *supra*, signed by the Officer Defendants.

76.     On October 28, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "3Q21 10-Q"). For the nine months ended September 30, 2021, the 3Q21 10-Q reported loss from operations of $36.887 million, provision for income taxes of $18.016 million, a net loss of $82.852 million, basic and diluted loss per share of $0.17, total current assets of $5.189 billion, other non-current assets of $41.808 million, total current liabilities of $3.161 billion, other noncurrent liabilities of $58.332 million, and total shareholders' equity of $11.21 billion.

77.     Additionally, the 3Q21 10-Q contained substantively the same statements as referenced in ¶¶ 58 and 67, *supra*, regarding Clarivate's acquisition of CPA Global, while changing the aggregate consideration recorded in connection with the closing of that acquisition to $8,740,324, net of $99,275 cash acquired.

78.     The 3Q21 10-Q also contained substantively the same statements as referenced in ¶ 62, *supra*, representing that Clarivate's disclosure controls and procedures were once again effective, while assuring investors that "we designed and implemented a new control to evaluate settlement features used to determine the classification of any new warrant instruments"; that "[b]ased on the actions taken, as well as the evaluation of the design of the new control, and the

fact that there have been no new warrant instruments issued recently nor in the foreseeable future, we determined that the material weakness has been remediated as of September 30, 2021"; and that "[t]here were no changes in our internal control over financial reporting that occurred during the period covered by [the 3Q21] 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

79.      Appended as an exhibit to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 61, *supra*, signed by the Officer Defendants.

80.      The statements referenced in ¶¶ 57-79 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Clarivate's financial statements issued during the Class Period, including the 2010 10-K/A and the 1Q21 10-Q which the Company incorporated by reference into the Preferred Shares Offering Materials, violated GAAP; (ii) the Company maintained defective disclosure controls and procedures as a result of a material weakness in its internal control over financial reporting; and (iii) the foregoing material weakness was not limited to how the Company accounted for warrants.

81.      On December 1, 2021, Clarivate announced that it would replace Defendant Hanks as CFO effective December 16, 2021.  The Company did not provide investors with a reason for the change in leadership.

**The Truth Begins to be Revealed**

82.      On December 27, 2021, Clarivate filed a Current Report on Form 8-K with the SEC, disclosing that the Company again needed to restate the 2020 10-K, as well as the 1Q21 10-Q, the 2Q21 10-Q, and the 3Q21 10-Q.  Clarivate stated:

On December 22, 2021, Clarivate . . . concluded that **the financial statements previously issued as of and for the year ended December 31, 2020, and the quarterly periods ended March 31, 2021, June 30, 2021, and September 30, 2021, should no longer be relied upon because of an error in such financial statements**, as addressed in FASB ASC Topic 250, Accounting Changes and Error Corrections.

**The error relates to** the treatment under U.S. generally accepted accounting principles ("GAAP") relating to **an equity plan included in the CPA Global business combination which was consummated on October 1, 2020 ("the CPA Global Transaction"). In the affected financial statements, certain awards made by CPA Global under its equity plan were incorrectly included as part of the acquisition accounting for the CPA Global Transaction.**

For the majority of these awards, the Company concluded that expenses should have been recognized as stock-based compensation charges over the vesting period from October 1, 2020 to October 1, 2021, with only a portion of the liability recorded as part of acquisition accounting. These expenses, of up to $185 million, will be recorded primarily over the periods ending December 31, 2020, March 31, 2021, June 30, 2021, and September 30, 2021. **Accordingly, the Company's previously issued financial statements as of and for the periods ended December 31, 2020, March 31, 2021, June 30, 2021, and September 30, 2021, will need to be restated.**

The Company is in the process of preparing a second amendment to its Annual Report on Form 10-K for the year ended December 31, 2020 in order to provide restated financial statements and applicable footnote disclosures, along with revisions to information provided in Management's Discussion and Analysis and management's assessment of the effectiveness of internal control over financial reporting, including the impact on disclosure controls and procedures. The Company is also preparing amendments to its previously issued Form 10-Q filings for the periods ended March 31, 2021, June 30, 2021, and September 30, 2021.

. . . **The Company anticipates that the restated financial information will affect GAAP income (loss) from operations, benefit (provision) for income taxes, net income (loss), earnings (loss) per share, current and non-current assets, current and non-current liabilities, and shareholders' equity.**

Management is assessing the effect of the restatements on the Company's internal control over financial reporting and its disclosure controls and procedures. **The Company expects to report an additional material weakness following an analysis of the cause of these restatements.** A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.

The existence of a material weakness precludes a conclusion by management that the Company's disclosure controls and procedures and internal control over financial reporting are effective.

(Emphasis added.)

83.     Later on December 27, 2021, one hour before markets closed, *StreetInsider.com* published an article on Clarivate titled, "Clarivate Plc (CLVT) PT Lowered to $29 at Stifel on Accounting Error."  The article reported:

Stifel analyst Shlomo Rosenbaum lowered the price target on Clarivate Plc (NYSE: CLVT) to $29.00 (from $32.00) . . . after the company issued an 8K stating it discovered an accounting error related to equity awards that CPA Global had issued under its equity plan.

"The timing of this discovery is poor, less than a month after the prior CFO left, though we are told that the items are not related, and this error was discovered in the last week," the analyst commented. "This error should not impact Revenue, Adjusted EBITDA or Adjusted FCF, but it is likely to impact the GAAP EBITDA and earnings, and the reported FCF."

84.     On this news, the price of Clarivate ordinary shares fell $0.16 per share, or 0.65%, from $24.74 per share on December 23, 2021 to $24.58 per share at the close of trading on December 27, 2021.  As the market continued to digest the SEC filing and the *StreetInsider.com* article, Clarivate ordinary shares fell an additional $1.70 per share, or 6.92%, to $22.88 per share at the close of trading on December 28, 2021—a total decline of $1.86 per share, or 7.52%, over two consecutive trading days.

85.     Likewise, the price of Clarivate preferred stock fell $0.35 per share, or 0.37%, from $94.01 per share on December 23, 2021 to $93.66 per share at the close of trading on December 27, 2021, and then fell an additional $5.22 per share, or 5.6%, to $88.44 per share at the close of trading on December 28, 2021—a total decline of $5.57 per share, or 5.9% over two consecutive trading days.

86.     On February 3, 2022, Clarivate published a press release titled, "Clarivate Completes Restatement of Prior Financial Statements; Comments on 2022 Financial Outlook" and filed it on Form 8-K with the SEC.   In the press release, Clarivate announced that it filed amendments to its Form 10-K for the year ended December 31, 2020 (the "Second 2020 10-K/A"), and its Form 10-Q's for the quarters ended March 31, 2021 ("1Q21 10-Q/A"), June 30, 2021 ("2Q21 10-Q/A") and September 30, 2021 ("3Q21 10-Q/A").   The press release quoted Defendant Stead, who stated, "We are committed to improving our processes and procedures as we move forward following the completion of the amendments to our SEC filings."   The press release also quoted current Chief Financial Officer Jonathan Collins, as stating, "Net income for the full year of 2021 will be significantly below guidance due to the impact of the restatements."

87.     In the Second 2020 10-K/A, Clarivate disclosed that it "concluded that the Company's DC&P and ICFR were not effective as of December 31, 2020, due to additional material weaknesses related to, (1) the lack of an effectively designed control over the communication of modifications to pre-existing compensation agreements in an acquisition transaction between the legal function and the accounting function to ensure the accounting impact of the modifications could be evaluated, and (2) the lack of an effectively designed control with a sufficient level of precision to allow for an appropriate review of the tax balances associated with the opening balance sheet of acquired entities."   Additionally, Clarivate restated its financial results for fiscal year 2020 as set forth in the table below.

| Financial Metric | As Reported in 2020 10-K/A | As Restated |
|---|---|---|
| Income (loss) from Operations | $2.805 million | ($36.347 million) |
| Benefit (provision) for Income Taxes | $2.302 million | $2.698 million |
| Net Income (Loss) | ($311.869 million) | ($350.625 million) |
| Basic and Diluted Loss Per Share | $0.73 | $0.82 |
| Total Current Assets | $1.327 billion | $1.147 billion |
| Other Non-Current Assets | $47.944 million | ($31.334 million) |
| Total Current Liabilities | $1.569 billion | $1.423 billion |
| Other Non-Current Liabilities | $67.722 million | $49.445 million |
| Total Shareholders' Equity | $9.28 billion | $9.034 billion |

88.     In the 1Q21 10-Q/A, Clarivate disclosed that it "concluded that the Company's DC&P were not effective as of March 31, 2021" for the same reasons identified in ¶ 87, *supra*. Additionally, Clarivate restated its financial results for 1Q21 as set forth in the table below.

| Financial Metric | As Reported in 1Q21 10-Q | As Restated |
|---|---|---|
| Income (loss) from Operations | ($34.207 million) | ($69.510 million) |
| Benefit (provision) for Income Taxes | ($3.569 million) | ($263,000) |
| Net Income (Loss) | ($23.954 million) | ($55.951 million) |
| Basic and Diluted Loss Per Share | $0.04 | $0.09 |
| Total Current Assets | $1.414 billion | $1.251 billion |
| Other Non-Current Assets | $42.504 million | $27.610 million |
| Total Current Liabilities | $1.467 billion | $1.367 billion |
| Other Non-Current Liabilities | $62.143 million | $47.780 million |
| Total Shareholders' Equity | $9.396 billion | $9.118 billion |

89.     In the 2Q21 10-Q/A, Clarivate disclosed that it "concluded that the Company's DC&P were not effective as of June 30, 2021" for the same reasons identified in ¶ 87, *supra* Additionally, Clarivate restated its financial results for 2Q21 as set forth in the table below.

| Financial Metric | As Reported in 2Q21 10-Q | As Restated |
|---|---|---|
| Income (loss) from Operations | ($11.752 million) | ($63.770 million) |
| Benefit (provision) for Income Taxes | ($10.868 million) | ($8.207 million) |
| Net Income (Loss) | ($82.210 million) | ($131.567 million) |
| Basic and Diluted Loss Per Share | $0.13 | $0.22 |
| Total Current Assets | $5.486 billion | ($5.316 billion) |
| Other Non-Current Assets | $42.145 million | $26.530 million |
| Total Current Liabilities | $3.420 billion | $3.360 billion |
| Other Non-Current Liabilities | $62.149 million | $49.490 million |
| Total Shareholders' Equity | $11.490 billion | $11.161 billion |

90.    In the 3Q21 10-Q/A, Clarivate disclosed that it "concluded that the Company's DC&P were not effective as of September 30, 2021" for the same reasons identified in ¶ 87, *supra*. Additionally, Clarivate restated its financial results for 3Q21 as set forth in the table below.

| Financial Metric | As Reported in 3Q21 10-Q | As Restated |
|---|---|---|
| Income (loss) from Operations | $9.072 million | $14.375 million |
| Benefit (provision) for Income Taxes | ($3.579 million) | ($3.770 million) |
| Net Income (Loss) | $23.312 million | $28.424 million |
| Basic and Diluted Earnings Per Share | $0 | $0.01 |
| Total Current Assets | $5.189 billion | $5.048 billion |
| Other Non-Current Assets | $41.808 million | $28.998 million |
| Total Current Liabilities | $3.161 billion | $3.128 billion |
| Other Non-Current Liabilities | $58.332 million | $49.960 million |
| Total Shareholders' Equity | $11.210 billion | $10.892 billion |

91.    On this news, the price of Clarivate ordinary shares fell $2.90 per share, or 16.4%, from $17.71 per share on February 2, 2022 to $14.81 per share at the close of trading on February 3, 2022.

92.    Likewise, the price of Clarivate preferred shares fell $9.30 per share, or 12.9%, from $72.30 per share on February 2, 2022 to $63.00 per share at the close of trading on February 3, 2022.

93.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Clarivate securities, Plaintiff and other Class members have suffered significant losses and damages.  Additionally, since the Preferred Shares Offering, and as a result of the disclosure of material adverse facts omitted from the Offering Material, the price of Clarivate preferred shares has fallen significantly below its Offering price of $100, damaging Plaintiff and the Class.

## LOSS CAUSATION

94.     During the Class Period, as detailed herein, the Exchange Act Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market in violation of the Exchange Act.  This artificially inflated the price of Clarivate securities and operated as a fraud or deceit on the Class.  Later, when the Exchange Act Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on December 27, 2021 and February 3, 2022, as alleged herein, the price of Clarivate securities fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of Clarivate securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the Exchange Act.  Loss causation is not an element of the Securities Act Claims alleged herein.

## CLASS ACTION ALLEGATIONS

95.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired Clarivate publicly traded securities during the Class Period and/or purchased or otherwise acquired Clarivate Preferred Shares pursuant and/or traceable to the Preferred Shares Offering (the "Class").

Excluded from the Class are Defendants and their families, directors, and officers of Clarivate and their families and affiliates.

96.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of September 30, 2021, there were more than 639 million shares of Clarivate common stock outstanding and more than 14 million Clarivate preferred shares outstanding owned by at least thousands of investors.

97.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    A.  Whether Defendants' acts violated the federal securities laws as alleged herein;

    B.  Whether the Registration Statement omitted and/or misrepresented material facts about the Company and its business;

    C.  Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    D.  Whether the Exchange Act Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

    E.  Whether the price of Clarivate securities were artificially inflated;

    F.  Whether Defendants' conduct caused the members of the Class to sustain damages; and

    G.  The extent of damage sustained by Class members and the appropriate measure of damages.

98.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

99.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

100.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

101.    The Defendants' "Safe Harbor" warnings accompanying their forward-looking statements issued during the Class Period were ineffective and inapplicable and cannot shield the statements at issue from liability.

102.    Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was made by or authorized and/or approved by an executive officer of Clarivate who knew that the statement was false.

## PRESUMPTION OF RELIANCE

103.    At all relevant times, the market for Clarivate securities was an efficient market for the following reasons, among others:

A.  Clarivate common stock and preferred shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

B.  As a regulated issuer, Clarivate filed periodic public reports with the SEC;

C. Clarivate regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

D. Clarivate was followed by many securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

104. As a result of the foregoing, the market for Clarivate securities promptly digested current information regarding Clarivate from all publicly available sources and reflected such information in the price. Under these circumstances, all purchasers of Clarivate securities during the Class Period suffered similar injury through their purchase of Clarivate securities at artificially inflated prices and the presumption of reliance applies.

105. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.

## COUNT I

**For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against Defendants Clarivate, Stead, and Hanks**

106. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

107. During the Class Period, the Defendants named in this Count carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did:

(i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Clarivate securities at artificially inflated prices.

108.   The Defendants named in this Count (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Clarivate securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

109.   The Defendants named in this Count, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal that Clarivate's financial statements violated GAAP and that the Company maintained defective disclosure controls and procedures as a result of a material weakness in its internal controls over financial reporting that was not limited to how the Company accounted for warrants.

110.   During the Class Period, the Defendants named in this Count made the false statements specified above which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

111.   The Defendants named in this Count had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  Defendants' material misrepresentations and/or omissions

were done knowingly or recklessly and for the purpose of concealing Clarivate's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.

112.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Clarivate securities.  Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices had been artificially inflated by Defendants' fraudulent course of conduct.

113.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

114.    By virtue of the foregoing, the Defendants named in this Count violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violation of Section 20(a) of the Exchange Act Against Defendants Stead and Hanks**

115.    Plaintiff repeats, incorporates, and re-alleges each and every allegation set forth above as if fully set forth herein.

116.    Defendants Stead and Hanks acted as controlling persons of Clarivate within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Clarivate, the Officer Defendants had the power and ability to control the actions of Clarivate and its employees.

117.    By reason of such conduct, the Defendants named in this Count are liable pursuant to Section 20(a) of the Exchange Act.

## COUNT III

**Violations of Section 11 of the Securities Act**
**Against Defendant Clarivate and the Individual, Underwriter, and Auditor Defendants**

118.    Plaintiff repeats, incorporates, and re-alleges the allegations set forth above as if fully set forth herein, except those pertaining solely to Plaintiff's Exchange Act Claims.  This claim does not sound in fraud and Plaintiff expressly disclaims any allegations of fraud or intentional misconduct.  For the purposes of this Count, Plaintiff does not allege that any Defendant acted with scienter, or fraudulent intent, which is not an element of a claim under Section 11 of the Securities Act.  This Count is based solely on strict liability as to the Company, and negligence as to the other Defendants named in this Count.

119.    The Registration Statement and Offering Materials for the Preferred Shares Offering was inaccurate and included (and/or incorporated by reference) untrue statements of material fact, omitted to state other facts necessary to make the statements made not inaccurate and omitted to state material facts required to be stated therein.

120.    The Defendants named in this Count issued, caused to be issued, or participated in the issuance of actionable statements or omissions in the Preferred Shares Offering Materials. Clarivate was the registrant for the Preferred Shares Offering.

121.    As the issuer of the Preferred Shares, Clarivate is strictly liable to the Plaintiff and the Class under Section 11 of the Securities Act for the materially inaccurate statements contained in the Registration Statement and its failure to be complete and accurate.

122.    The other Defendants named in this Count acted negligently in that none of them made a reasonable investigation to ensure, or had reasonable grounds to believe at the time the

relevant parts became effective that the statements contained in the Registrations Statement were true and there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.  These Defendants are liable, and certain of them are jointly and severally liable, for the actionable statements and omissions in the Preferred Shares Offering Materials in that, among other things:

(a) the Officer Defendants each signed the Registration Statement;

(b) the Director Defendants each signed the Registration Statement and each was a director of the Company at the time of the filing of the Registration statement with respect to which their liability is asserted;

(c) PwC acted as an accountant and auditor, or otherwise in a professional capacity that gave authority to the statements it made and, with its consent, was named as having prepared or certified certain parts of the Registration Statement;

(d) The Underwriter Defendants each acted as an underwriter with respect to the Preferred Shares Offering.

123.    When they acquired the Preferred Shares in or pursuant and/or traceable to the Preferred Shares Offering, Plaintiff and others similarly situated did not know, nor in the exercise of reasonable care could they have known, of the untruths and/or omissions alleged herein.

124.    Plaintiff and others similarly situated suffered damages in connection with purchase or acquisition of the Preferred Shares in our pursuant and/or traceable to the Preferred Shares Offering.

125.    By reason of the conduct herein alleged, each Defendant named in this Count violated Section 11 of the Securities Act.

<u>**COUNT IV**</u>

**Violations of Section 12(a)(2) of the Securities Act Against the Company, the Individual Defendants and the Underwriter Defendants**

126.    Plaintiff repeats, incorporates, and re-alleges the allegations set forth above as if fully set forth herein, except those pertaining solely to Plaintiff's Exchange Act Claims.  This claim does not sound in fraud and Plaintiff expressly disclaims any allegation of fraud or intentional misconduct.  For the purposes of this Count, Plaintiff does not allege that any Defendant acted with scienter, or fraudulent intent, which is not an element of a claim under Section 12(a)(2) of the Securities Act.  This Count is based solely on negligence.

127.    The Defendants named in this Count offered, sold, and/or solicited the purchase of, (or assisted in the offer, sale, or solicitation of the purchase of) the Preferred Shares, within the meaning of the Securities Act, by means of a prospectus or oral communication.

128.    The Defendants named in this Count assisted in the planning of the Preferred Shares Offering and actively participated in decisions regarding, among other things, the price at which the Preferred Shares would be sold and the language contained in the Preferred Shares Offering Materials.

129.    The Preferred Shares Offering Materials included (and/or incorporated by reference) untrue statements of material fact, omitted to state other facts necessary to make the statements made not inaccurate, and omitted to state material facts required to be stated therein.

130.    The Defendants named in this Count acted negligently in that none of them exercised reasonable care to ensure that the Preferred Shares Offering Materials did not include untrue or misleading statements or omissions of material fact.  Had they exercised reasonable care, they would have known of such untruth or omission.

131.    When they acquired Clarivate Preferred Shares directly from Defendants named in this Count, Plaintiff and others similarly situated did not know, nor in the exercise of reasonable care could they have known, of the untruths or omissions contained (and/or incorporated by reference) in the Preferred Shares Offering Materials.

132.    Plaintiff and others similarly situated suffered damages in connection with the purchase or acquisition of the Preferred Shares in our pursuant and/or traceable to the Preferred Shares Offering.

133.    By reason of the conduct alleged herein, each Defendant named in this Count violated Section 12(a)(2) of the Securities Act.

## COUNT V

**Violations of Section 15 of the Securities Act Against the Individual Defendants**

134.    Plaintiff repeats, incorporates, and re-alleges the allegations set forth above as if fully set forth herein, except those pertaining solely to Plaintiff's Exchange Act Claims.  This claim does not sound in fraud.  For the purposes of this Count, Plaintiff does not allege that any Defendant acted with scienter, or fraudulent intent, which is not an element of a claim under Section 15 of the Securities Act.

135.    During their tenures as officers and/or directors of Clarivate, the Defendants named in this Count were controlling persons of the Company, within the meaning of the Securities Act.

136.    The Defendants named in this Count by virtue of their positions of control and authority as executive officers and directors of Clarivate and their direct participation in and/or awareness of the Company's operations and finances, possessed the power to, and did, direct or cause the direction of management and policies of the Company and its employees, or otherwise

cause the Company to issue or offer and/or sell securities pursuant to, the defective Preferred Shares Offering materials, which is the basis of Count III and Count IV.

137.    The Defendants named in this Count had the power to, and did, control the decision making of the Company, including the content and issuance of the statements contained (and/or incorporated by reference) in the Preferred Shares Offering Materials; they were provided with or had unlimited access to, copies of the Preferred Shares Offering Materials (and/or documents incorporated by reference) alleged herein to contain actionable statements or omissions prior to and/or shortly after such statements were issued, and had the power to prevent the issuance of the statements or omissions or to cause them to be corrected; and they signed the Registration Statement (and/or certain of the Company's SEC filings incorporated by reference therein) and were directly involved in or responsible for providing false information contained in the Preferred Shares Offering Materials (and/or documents incorporated by reference therein) and/or certifying and approving that information.

138.    As set forth above, the Company is liable to Plaintiff and other similarly situated pursuant to Section 11 and/or Section 12(a)(2) of the Securities Act, as controlling persons of the Company, the Individual Defendants are liable jointly and severally with and to the same extent as the Company.

139.    By reason of the conduct alleged herein, each Defendant named in this Count violated Section 15 of the Securities Act.

**PRAYER FOR RELIEF**

140.    **WHEREFORE**, Plaintiff prays for judgment as follows:

    A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

141. Plaintiff demands a jury trial.

Dated: March 11, 2022

Respectfully submitted,

*/s/ Javier Bleichmar*
Javier Bleichmar
Erin Woods
Ross Shikowitz
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
ewoods@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Plaintiff*

## CERTIFICATION

I, Rod Graves, on behalf of Arkansas Teacher Retirement System ("ATRS"), as Deputy Director of ATRS, hereby certify as follows:

1.       I am fully authorized to enter into and execute this Certification on behalf of ATRS.

2.       I have reviewed the Complaint against Clarivate Plc ("Clarivate") and others alleging violations of the federal securities laws and have authorized its filing.

3.       ATRS did not purchase or sell securities of Clarivate that are the subject of the Complaint at the direction of counsel in order to participate in any private action under the federal securities laws.

4.       ATRS is willing to serve as a representative party in this matter, including providing testimony at deposition and trial, if necessary.

5.       ATRS's transactions in the Clarivate securities that are the subject of the Complaint during the class period specified therein of February 26, 2021 to February 2, 2022, inclusive (the "Class Period")  are reflected in Schedule A, attached hereto.

6.       For securities retained, ATRS owns and holds legal title to the securities that are the subject of the Complaint.  For securities sold, ATRS owned and held legal title to the securities that are the subject of the Complaint at all relevant times.

7.       ATRS has not sought to serve as a representative party in a class action under the federal securities laws filed during the last three years.

8.      Beyond its *pro rata* share of any recovery, ATRS will not accept payment for serving as a representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses including lost wages as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 11 day of March, 2022.


Rod Graves
Deputy Director
*Arkansas Teacher Retirement System*

**SCHEDULE A**
TRANSACTIONS IN
CLARIVATE PLC

ORDINARY SHARES

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Acquisition[*] | 09/01/2021 | 493.00 | 25.23 | ($12,438.39) |
| Acquisition[*] | 09/01/2021 | 2,516.00 | 25.23 | ($63,478.68) |
| Sale | 09/17/2021 | -2,516.00 | 24.16 | $60,782.79 |

PREFERRED SHARES

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchase | 06/10/2021 | 10,665.00 | 100.00 | ($1,066,500.00) |
| Purchase | 06/10/2021 | 47,800.00 | 100.00 | ($4,780,000.00) |
| Purchase | 06/10/2021 | 8,955.00 | 99.54 | ($891,351.15) |
| Purchase | 06/17/2021 | 7,770.00 | 98.82 | ($767,835.29) |
| Sale | 07/29/2021 | -10,115.00 | 90.92 | $919,615.34 |
| Purchase | 12/02/2021 | 5,660.00 | 92.71 | ($524,717.09) |
| Purchase | 12/02/2021 | 9,035.00 | 89.87 | ($812,011.59) |
| Purchase | 12/21/2021 | 4,740.00 | 91.84 | ($435,340.56) |
| Sale | 01/12/2022 | -10,970.00 | 81.30 | $891,841.25 |
| Sale | 01/14/2022 | -5,275.00 | 72.03 | $379,970.91 |

[*] Received from a dividend of Clarivate preferred shares payable in ordinary shares on September 1, 2021.