```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KEVIN PAROT, Individually and on Behalf
of All Others Similarly Situated,

                    Plaintiff,              MEMORANDUM
                                             AND ORDER

        -against-                            22-cv-394 (ARR)
                                             22-cv-1371 (ARR)
CLARIVATE PLC, RICHARD HANKS                 22-cv-1372 (ARR)
and JERRE STEAD,

                    Defendants.
------------------------------------------------------------x
```

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court are motions for consolidation of three related actions, as well as competing motions for the appointment of lead plaintiff and approval of lead counsel, filed by the following movants: (1) the Pension Trust Fund for Operating Engineers (the "Pension Trust Fund") and (2) the Arkansas Teacher Retirement System ("ATRS"). See ATRS Motion to Appoint Counsel, Appoint Lead Plaintiff and to Consolidate Cases (Mar. 25, 2022) ("ATRS Mot."), Electronic Case Filing ("ECF") Docket Entry ("DE") #13;[1] Pension Trust Fund Motion to Consolidate Cases, for Appointment as Lead Plaintiff and to Appoint Counsel (Mar. 26, 2022) ("PTF Mot."), DE #16.[2] For the reasons that follow, this Court grants Pension Trust Fund's motion for consolidation, appointment as lead plaintiff and approval of lead counsel. Accordingly, Pension Trust Fund is appointed as lead plaintiff, with

---

[1] Unless otherwise noted, docket entry citations are to those in the first-filed case, Parot v. Clarivate Plc et al., 22-cv-394 (ARR).

[2] On March 25, 2022, Pension Trust Fund's motion was filed in one of the related actions in this District, Arkansas Teacher Retirement System v. Clarivate Plc et al., 22-CV-1372 (ARR). See DE #6 in 22-CV-1372 (ARR).

its choice of counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") appointed as lead counsel. The competing motion filed by ATRS is denied as moot.

## BACKGROUND

On January 24, 2022, plaintiff Kevin Parot filed the instant putative class action on behalf of investors who purchased publicly traded securities of Clarivate Plc ("Clarivate") during the period between February 26, 2021 and December 27, 2021. See Complaint (Jan. 24, 2022) ("Compl."), DE #1. The Parot Complaint alleges that defendants Clarivate Plc, Richard Hanks and Jerre Stead violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

As noted in the preceding footnote, on March 11, 2022, a substantially similar action was filed in this District under the Exchange Act, Arkansas Teacher Retirement System v. Clarivate Plc et al., 22-CV-1372 (ARR) (the "ATRS action"), against the same defendants as in the instant action, but for a slightly longer class period, between February 26, 2021 and February 2, 2022. The ATRS action also includes claims under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77o, against additional defendants, including Clarivate's Board of Directors, Chief Accounting Officer, outside auditor, and underwriters of Clarivate's offering of preferred shares. Yet another related action was filed in this District on March 11, 2022, Boynton Beach Firefighters' Pension Fund v. Clarivate plc, 22-cv-1371 (ARR), asserting the same Exchange Act claims against the same defendants as in the instant action, but alleging an even longer class period, between November 10, 2020 and February 2, 2022.

Clarivate is an information services and analytics company. Compl. ¶¶ 2, 20. Clarivate's ordinary and preferred shares trade on the New York Stock Exchange. See id. ¶ 14. On October 1, 2020, Clarivate acquired CPA Global, an intellectual property software and tech-enabled services company. Id. ¶¶ 2, 20. Clarivate repeatedly assured its investors that Clarivate's financial statements were true and accurate in all material respects and that its internal controls and procedures over financial reporting – including how Clarivate accounted for warrants and for the equity plan included in the CPA Global acquisition – were effective, while simultaneously issuing positive financial guidance. Id. ¶¶ 3, 21.

On December 27, 2021, Clarivate disclosed in a filing with the U.S. Securities and Exchange Commission that its financial statements for the year ended December 31, 2020, as well as for the quarterly periods ended March 31, June 30, and September 30, 2021, "should no longer be relied upon because of an error in such financial statements." Id. ¶¶ 5, 45. The error was identified as follows: "In the affected financial statements, certain awards made by CPA Global under its equity plan were incorrectly included as part of the acquisition for the CPA Global Transaction." Id.

Also on December 27, 2021, StreetInsider.com published an article reporting that a "Stifel analyst . . . lowered the price target on Clarivate . . . to $29.00 from ($32.00)" due to the disclosure of an accounting error related to equity awards that CPA Global had issued under its equity plan. Id. ¶¶ 6, 46. The price of Clarivate common stock fell $0.16 per share, or 0.65 percent, to $24.58 per share at the close of trading on December 27, 2021. Id. ¶¶ 7, 47. The price of common stock continued to fall an additional $1.70 per share, or 6.92 percent, to $22.88 on December 28, 2021. Id.

The Boynton Beach and ATRS actions further allege that thereafter, on February 3, 2022, Clarivate filed amendments to its annual report for the year ended December 31, 2020, and to its reports for the quarters ended March 31, June 30 and September 30, 2021, revealing significant decreases in previously reported income from operations, net income, and earnings per share.  See Boynton Beach Complaint (Mar. 11, 2022) ¶¶ 11, 47, DE #1 in 22-cv-1371; ATRS Complaint (Mar. 11, 2022) ¶¶ 17-18, 86, DE #1 in 22-cv-1372.  Clarivate also disclosed that its net income for 2021 would be "significantly below" its previously issued guidance due to the restated financials.  See Boynton Beach Complaint ¶¶ 11, 47; ATRS Complaint ¶¶ 19, 86.  Clarivate further admitted that "material weaknesses in internal control over financial reporting existed as of December 31, 2020."  Boynton Beach Complaint ¶¶ 11, 47.  Following the aforesaid news, Clarivate common stock and preferred stock suffered significant further declines.  See Boynton Beach Complaint ¶¶ 11, 48; ATRS Complaint ¶¶ 20-21.

Two putative class members filed motions to consolidate the three related actions, along with competing applications to appoint the respective movant as lead plaintiff and approve its choice of class counsel.  See ATRS Mot.; PTF Mot.  One such movant, ATRS, thereafter filed a notice of non-opposition to the Pension Trust Fund's motion for appointment as lead plaintiff.  See Notice by Arkansas Teacher Retirement System of Non-Opposition to Competing Lead Plaintiff Motion (Apr. 7, 2022) ("ATRS Non-Opposition"), DE #19.  Therefore, the motion of the Pension Trust Fund stands unopposed.

# DISCUSSION

I. **Notice Requirement and the Filing of Timely Motions**

As an initial matter, the PSLRA requires that the plaintiff who files the first action publish notice to the class within 20 days of filing the action, in "a widely circulated national business-oriented publication or wire service," advising members:

>   (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
>   (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On January 24, 2022, the same day that the instant complaint was filed, a notice was published in *Globe Newswire* announcing that a securities class action had been filed against Clarivate and several of its officers. See PSLRA Notice, DE #18-1. The published press release advised those who wished to serve as lead plaintiff to file the appropriate motion no later than March 25, 2022. See id. at ECF p. 1. No moving party has challenged the adequacy of the January 24, 2022 notice, and the filing of a press release through *Globe Newswire* is an appropriate means of satisfying the PSLRA's notice requirement. See, e.g., Rodriguez v. DraftKings Inc., 21 Civ. 5739 (PAE), 2021 WL 5282006, at *2 (S.D.N.Y. Nov. 12, 2021); Gutman v. Lizhi Inc., 21-CV-00317 (LDH)(PK), 2021 WL 8316283, at *1 (E.D.N.Y. Apr. 28, 2021).

Based on the January 24, 2022 publication date, the 60-day period in which members of the putative class could move to serve as lead plaintiff expired on March 25, 2022.

5

Accordingly, having been filed on or before March 25, 2022,[3] both of the pending motions for appointment were timely filed with this Court.

## II.     Consolidation

In order "to avoid unnecessary cost or delay," a court may consolidate multiple actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). To determine whether consolidation is appropriate, district courts must consider

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple trial alternatives.

Brady v. Top Ships Inc., 324 F.Supp.3d 335, 343 (E.D.N.Y. 2018) (Bianco, J.) (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) (alterations in original)). Absent prejudice to the defendants, "[c]onsolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statements and reports[.]" Rauch v. Vale S.A., 378 F.Supp.3d 198, 204 (E.D.N.Y. 2019) (quoting Constance Sczesny Tr. v. KPMG LLP, 223 F.R.D. 319, 322 (S.D.N.Y. 2004)); accord Darish v. N. Dynasty Minerals Ltd., 20-cv-5917 (ENV), 2021 WL 1026567, at *4 (E.D.N.Y. Mar. 17, 2021). Indeed, the consolidation of stockholder suits often benefits both the courts and the parties. See Darish, 2021 WL 1026567, at *4; In re Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 294

---

[3] Since the Pension Trust Fund's motion was timely filed in the ATRS action on March 25, 2022 (DE #6 in 22-cv-1372 (ARR)), the Court deems it timely here. See generally Reitan v. China Mobile Games & Entm't Grp., Ltd., 68 F.Supp.3d 390, 399 (S.D.N.Y. 2014) (deeming timely refiled motion for appointment as lead counsel where original motion was filed before deadline); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., LLC, 229 F.R.D. 395, 403 (S.D.N.Y. 2004) ("motion will not be denied based on what appears to be a docketing irregularity").

(E.D.N.Y. 1998); see also Kaplan v. Gelfond, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) (characterizing the benefits of consolidation to courts and parties as a "well recognized" principle), reconsidered in part on other grounds sub nom. *In re* IMAX Sec. Litig., 2009 WL 1905033 (S.D.N.Y. June 29, 2009).

Notably, both movants herein have expressed support for consolidation, and no defendant has opposed it. See Brady, 324 F.Supp.3d at 343. For example, ATRS supports consolidation because the complaints "present substantially similar factual and legal issues [and] allege claims relating to substantially similar periods of time and are premised on similar types of misstatements, including that Clarivate's financial statements violated GAAP and that [Clarivate] maintained defective internal controls." ATRS's Memorandum in Support (Mar. 25, 2022) ("ATRS Mem.") at 12, DE #14. Similarly, the Pension Trust Fund contends that the related cases "are based on the same underlying facts and involve largely the same legal issues," "against common defendants in similar class periods." Pension Trust Fund's Memorandum in Support (Mar. 26, 2022) ("PTF Mem.") at 4, DE #17.

Based on its review of the complaints in the three actions, this Court concurs that these cases involve common questions of law and fact. See Rauch, 378 F.Supp.3d at 204-06 (ordering consolidation of nine related securities actions with differences in defendants and class periods). Specifically, the pleadings assert common causes of action based on the same alleged deception and resulting loss, over a similar period against common defendants, and seek similar relief. Notably, the complaints marshal much of the same evidence in describing Clarivate's deception and the revelations thereof. The fact that the actions do not contain identical causes of action, defendants, or the same class period "is not an obstacle to

7

consolidation." In re Synergy Pharms. Inc. Sec. Litig., 18-CV-873 (AMD) (VMS), 2020 WL 5763830, at *2-3 (E.D.N.Y. Sept. 28, 2020); see Kaplan, 240 F.R.D. at 91 (absence of objection to consolidation, despite different start dates for class period, "weighs heavily against the potential for prejudice"); Pirelli, 229 F.R.D. at 402 (consolidating four cases even though "certain defendants are named in only one or some of the complaints" and there are "differences among the class periods proposed"); Pinkowitz v. Elan Corp., No. 02 CIV. 865 (WK), 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) (where plaintiffs in two cases alleged Securities Act violations in addition to Exchange Act violations, several of the related "lawsuits assert claims against specific defendants who are absent from the other class actions[,]" and "[n]ot every complaint agrees on the precise confines of the class period[,]" court rules that "none of these differences weigh against consolidation"). As the Court cannot discern any prejudice to any of the defendants from consolidating these matters, and the substance of the three complaints is largely overlapping, it is appropriate to consolidate them into a single case.

## III. Appointment of Lead Plaintiff

The PSLRA sets forth the procedure for the appointment of a lead plaintiff in a class action brought under the Exchange Act.[4] The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to secure the lead plaintiff designation. See *In re* Olsten Corp., 3 F.Supp.2d at 294. "By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly

---

[4] The PSLRA also contains identical lead plaintiff provisions in connection with the Securities Act. See 15 U.S.C. § 77z-1.

8

aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" Id. (quoting H.R. Rep. No. 104-369, at 32 (1995)). "As such, Congress sought to encourage institutional investors and other class members with large amounts at stake to step forward as the ideal lead plaintiffs in private securities litigation." Silverberg v Dryships Inc., 17-CV-4547 (SJF)(ARL), 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018) (internal quotation marks and citation omitted).

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (generally known as the "most adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts follow a two-step process to determine the most adequate plaintiff. See generally Darish, 2021 WL 1026567, at *5; In re Gentiva Sec. Litig., 281 F.R.D. 108, 111-12 (E.D.N.Y. 2012). In the first stage of the inquiry, the PSLRA establishes a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the Court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry: whether that presumption has been sufficiently "rebutted" by a member of the purported plaintiff class. See 15 U.S.C. § 78u-

9

4(a)(3)(B)(iii)(II). Specifically, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id.

### A. Largest Financial Interest

The PSLRA requires courts to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class[,]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), but offers no statutory guidance for determining which plaintiff has the largest financial interest, see Darish, 2021 WL 1026567, at *5; In re Gentiva, 281 F.R.D. at 117. Courts in the Second Circuit have adopted the four "*Olsten* factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re* Olsten Corp., 3 F.Supp.2d at 295 (citing Lax v. First Merchs. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); accord Chitturi v. Kingold Jewelry, Inc., 20-CV-2886-LDH-SJB, 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020); *In re* Gentiva, 281 F.R.D. at 112. Most crucial to the Court's determination is the fourth factor – the approximate financial loss suffered. See Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc., 21 Civ. 4390 (VM), 2021 WL 4298191, at *2 (S.D.N.Y. Sept. 21, 2021), adhered to on reconsideration sub nom. Plymouth Cnty. Re. Ass'n v. Array Tech.,

Inc., 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021); Darish, 2021 WL 1026567, at *5; Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Based on the record before the Court, the Pension Trust Fund is the movant that has the largest financial interest: during the longest noticed class period of November 10, 2020 through February 2, 2022,[5] the Pension Trust Fund is alleged to have suffered losses totaling $9,794,384.46. See Pension Trust Fund Loss Chart, DE #9-3. ATRS suffered losses of $7,101,403, less than the Pension Trust Fund's loss. See ATRS Mem. at 2. Indeed, ATRS concedes that it does not have the largest financial interest. See, e.g., ATRS Non-Opposition at 1.

B.     **Satisfaction of Rule 23**

After the Court has identified the plaintiff with the largest financial interest in the litigation, it must "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]." Darish, 2021 WL 1026567, at *6 (citation and internal quotation marks omitted); Khunt v. Alibaba Grp. Holding Ltd., 102 F.Supp.3d 523, 535 (S.D.N.Y. 2015); Pirelli, 229 F.R.D. at 411. Under the PSLRA, in order to serve as lead plaintiff, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) specifies four requirements for certification of a class action: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

In determining whether the presumptively most adequate plaintiff satisfies Rule 23 for the purposes of the PSLRA, a court need only consider whether the movant's claims are

---

[5] Where, as here, the motion relates to pleadings alleging varying class periods, courts use the longest class period in determining the largest financial interest. See Rauch, 378 F.Supp.3d at 208 n.11.

11

typical and adequate, and the presumptive lead plaintiff need only make a preliminary, prima facie showing that its claims satisfy the typicality and adequacy requirements of Rule 23. See Plymouth Cnty. Ret., 2021 WL 4298191, at *2; Chitturi, 2020 WL 8225336, at *5; In re Gentiva, 281 F.R.D. at 112 (citation omitted). At this initial stage of the litigation, "a wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification." Darish, 2021 WL 1026567, at *6 (citation and quotations omitted).[6]

The Pension Trust Fund has made the requisite preliminary showing with respect to Rule 23(a)'s typicality requirement. Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Brady, 324 F.Supp.3d at 350 (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). Like other members of the putative class, the Pension Trust Fund purchased Clarivate shares during the class period and the Pension Trust Fund's claims arise out of defendants' alleged misrepresentations or omissions about Clarivate's financial condition and projections. After Clarivate disclosed further information about its financial results, its stock price declined, causing injury to the Pension Trust Fund of the same kind, and arising out of the same facts, as that suffered by other class members. The Pension Trust Fund's claims for violation of the securities laws and resulting damages are based on the same legal arguments as those of the other class members. Thus, the Pension Trust Fund, as the movant

---

[6] "[A]ny finding that Rule 23 requirements have been met at this stage do[es] not preclude a later challenge in the context of a Rule 23 class certification motion." Ford v. Voxx Int'l Corp., No. 14-CV-4183(JS)(AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (citations omitted).

with the largest financial interest in the litigation, has preliminarily demonstrated typicality under Rule 23(a).

In this regard, the Pension Trust Fund has demonstrated typicality despite its lack of standing to bring Securities Act claims, based on the purchase of preferred shares. See Hevesi v. Citigroup Inc., 366 F.3d 70, 82-83 (2d Cir. 2004). "Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." Id. at 82. The PSLRA requires courts to appoint the movant with the largest financial stake in the outcome, rather than the party with standing to sue on all claims. As discussed above, the Pension Trust Fund can demonstrate Rule 23 typicality because the losses it suffered are of the same kind, and arise out of the same wrongful acts, as those suffered by other class members. See id. at 82-83.

The Pension Trust Fund represents that it "has already arranged to have an institutional investor that purchased preferred shares during the Class Period and suffered losses in connection therewith included as an additional representative in the event the Pension Trust Fund is appointed lead plaintiff." PTF Mem. at 6 n.5. The Second Circuit has expressly endorsed a lead plaintiff's bringing in additional named plaintiffs to assist in representing the class. See Hevesi, 366 F.3d at 82-83 (recognizing that "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim" and that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class"); accord In re Third Ave. Mgmt. LLC Sec. Litig., 16-cv-02758 (PKC), 2016 WL 2986235, at *3 (S.D.N.Y. May 13, 2016); In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig., No. 10 Civ. 275(PKC), 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011)

13

("a lead plaintiff may seek to incorporate additional named class plaintiffs in order to resolve any standing concerns"); see also In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 123 (S.D.N.Y. 2002).

The Pension Trust Fund has likewise preliminarily satisfied the adequacy requirement of Rule 23(a). The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Plymouth Cnty. Ret., 2021 WL 4298191, at *2 (citation omitted). Based on the Pension Trust Fund's submissions, the Court is satisfied that its retained counsel, Robbins Geller, is experienced, competent, and well-qualified to conduct this class action securities litigation. The Pension Trust Fund has a significant financial interest in the outcome of the case so as to vigorously advocate on behalf of the class and, in its papers, it denies the existence of any conflicts of interest with absent class members, see PTF Mem. at 7, and none is apparent to the Court.

In view of the aforementioned showing, and in the absence of any opposition, the Pension Trust Fund has satisfied Rule 23(a)'s typicality and adequacy requirements necessary to serve as lead plaintiff. Moreover, the presumption that the Pension Trust Fund is the most adequate plaintiff has not been rebutted by any evidence. Nothing in the record rebuts the presumption that the Pension Trust Fund would fairly and adequately protect the interests of the class, nor is there any reason to believe that the Pension Trust Fund is subject to any unique defense that would otherwise render it incapable of adequately representing the class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

In sum, having the largest financial interest in the litigation, and having otherwise made a preliminary showing of satisfying Rule 23's requirements, the Pension Trust Fund is entitled to a rebuttable presumption. In the absence of any proof whatsoever—let alone the requisite exacting proof—to rebut the presumption that it is the most adequate plaintiff, the Court appoints the Pension Trust Fund as lead plaintiff.

## IV. Approval of Lead Counsel

The PSLRA also specifies the procedure to be followed for approving lead counsel in putative class actions brought under federal securities laws. Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). As is evident from the statutory language, "the lead plaintiff's right to select and retain counsel is not absolute – the court retains the power and the duty to supervise counsel selection and counsel retention." City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc., CV 08-1418 (LDW) (ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (quoting In re Luxottica Grp., S.p.A. Sec. Litig., No. 01-CV-3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004)). Nevertheless, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." Rauch, 378 F.Supp.3d at 211 (internal quotation marks and citation omitted); Brady, 324 F.Supp.3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (citation and internal quotations omitted). The PSLRA thus makes clear that

15

courts should interfere with a lead plaintiff's selection and retention of counsel solely to protect the interests of the class. See Darish, 2021 WL 1026567, at *8; Rauch, 378 F.Supp.3d at 211.

Here, the Pension Trust Fund has selected Robbins Geller as lead counsel and seeks this Court's approval of that selection. In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience. See Rauch, 378 F.Supp.3d at 211. Robbins Geller has substantial experience litigating securities fraud class actions. The Pension Trust Fund refers the Court to the firm's website, which provides a detailed description of the educational backgrounds and legal experience of the attorneys at the firm. See https://www.rgrdlaw.com. The firm's resume lists multiple securities class action suits filed in courts within the Second Circuit, as well as numerous others brought in courts across the nation, in which Robbins Geller has served as either lead or co-lead counsel. See id. No parties have offered any reason why Robbins Geller would be ill-equipped to serve as lead counsel in this case. This Court concludes, as have other courts in this Circuit, that based on the firm's experience, Robbins Geller is qualified to serve as lead counsel in securities class actions. See, e.g., Yang v. Tr. for Advised Portfolios, 21-CV-1047 (FB)(MMH), 2022 WL 970772, at *5 (E.D.N.Y. Mar. 31, 2022); Skeels v. Piedmont Lithium Inc., 21-CV-4161 (LDH) (PK), 2022 WL 1236797, at *7, *8 (E.D.N.Y. Feb. 4, 2022); Rodriguez, 2021 WL 5282006, at *11.

Accordingly, the Court approves the Pension Trust Fund's selection of Robbins Geller to serve as lead counsel.

## CONCLUSION

For the reasons set forth above, the undersigned magistrate judge consolidates the three related cases, appoints the Pension Trust Fund as lead plaintiff, and approves Robbins Geller

16

as lead counsel.  ATRS's motion for appointment of lead plaintiff and approval of lead counsel is denied as moot.

Any objection to this Memorandum and Order must be filed with the Honorable Allyne R. Ross by June 1, 2022, or will be deemed waived.  The filing of an objection, without more, will not stay this Court's Order.

**SO ORDERED.**

**Dated:    Brooklyn, New York
              May 18, 2022**

/s/   *Roanne L. Mann*

**ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE**